Our next case for argument is 24-1924 Upstream Holdings v. Brekunitch. Good morning, your honors. My name is James Bachman. I represent the appellants in the case at hand. I truly believe this is an honor to be in front of you on this matter. In the case at hand, the parties formed a commercial partnership to manufacture and market a patented gutter cover. The role former that was commissioned and built for one purpose, to build a patented part. Every part that came out of the machine was commercial by design. There was no engineering definition of testing that encompasses producing thousands of feet, boxing, and then getting ready to market these products. That is straight from Mady v. Duke University, which teaches that there's no de minimis or testing defense where the conduct is commercial. And in this case, the conduct was clearly commercial. That is the first error that we have in the case at hand. The second error is that summary judgment was granted prior to discovery ending. And this is very important. We found a case from this circuit, which is Barron Services, Inc. v. Media Weather Innovations, LLC. The site is 717F3D907. Again, that's 717F3D907. And in that case, the district court was reversed. This court found that it was an abuse of discretion to end discovery before the discovery had ended. And this is exactly what happened in this case at hand. In fact, this case is more onerous than the case in Barron. And the reason for that is if discovery had been permitted to continue, we would have clearly found violations of 35 U.S.C. 271. And as a result, the court abused its discretion as a matter of law when it granted the defendant's motion for summary judgment. At a minimum, the record creates a genuine dispute, a material fact, which is based strictly upon the defendant's own testimony, which they changed numerous times, as well as undisputed video evidence. What evidence is there that Applebee's made the rain gutters? I'm sorry, Your Honor, I couldn't hear. What evidence is there that Applebee's made the rain gutters? I'm sorry, I can't hear. The rain? The rain gutters. No, these are gutter covers, Your Honor. And it's clear that there is clear evidence in the record where they were producing the patented gutter cover. Please remember that the minute that that gutter cover is extruded from the roll former, it is subject to a patent because there is a design as well as utility patent concerning the design. What was the evidence of who was producing the covers? Well, there was one video, and there are pictures of Steve Breconich, who was the defendant in this case, catching the product as it is extruded from the roll former. That is well within the evidence. Counsel, it's not well within the record. That was evidence, if I understand it, that was uncovered after summary judgment, is that correct? That's correct, Your Honor. Who stole the video equipment? Pardon? Who stole the video equipment? No one stole the video equipment. No one stole the video equipment. No, no one stole the video equipment. I think your brother stole the video equipment. No, excuse me. My son did not steal video equipment. He took partnership property to determine whether or not a violation had occurred. You had the video equipment for how long? We had the video equipment for nine months, and we could not break into, we could not get the code. Did you seek discovery of the password? Yes, we did, and that was refused. When did you seek discovery of the password? Immediately upon filing of our first discovery documents. We sought discovery, and we also sought video. We also requested from the appellees video evidence that they had within their possession, which was refused. They said that it was too burdensome. It was a boilerplate objection, Your Honor. They said it was too burdensome to produce the video, which ended up proving that they had, in fact, violated, infringed on the patent. So after the granting of summary judgment, you produced the video? We were able to get the video. When did you get it? We got it within two or three weeks after the summary judgment was granted, and then we filed a motion for reconsideration. And we kept filing motions for reconsideration because they kept changing their testimony, and that is very important here. They repeatedly changed their testimony to take into account the most recent video that we had uncovered, and I will say that this was a monumental task, Your Honor. We had to review more than 1,000 hours of video in order to make sure what we were looking at. And the statements that they made in this case, Your Honor, the most obvious material misrepresentation that they made was that they testified that they were too afraid to operate the machinery. However, the video clearly shows them operating it, producing the patented product, packaging it for distribution, and then celebrating after they had a production run. When you say clearly, was the video actually that clear? Well, we have pictures. Yes. Was it that clear that you saw faces and things like that? Yes, and we have put in front of the court and into the record of the people that we saw. It's in the affidavit evidence of the people that we saw who were producing or, if you will, catching the product that was being extruded from the roll former or someone carrying a product away to be packaged. How did you obtain the video? When my son gained access to the manufacturing facility, which was a partnership asset, we decided to take the video because we knew that people had been producing the product. And that's why we wanted to find out who it was. We had no idea who was producing the product, whether it could have been the Appleys or a third party. We had no idea who was doing that. We wanted to find out who had produced the product in violation of 35 U.S.C. 271. The court in this case held, and we have to give deference to fact findings, on page 64 of the appendix, this court held that you never sought discovery regarding the password. It also said that you were able to query the video system and learn the appropriate passwords and access the video and that you never provided any explanation why you could not access the video footage at any time in the prior two years in which you held it. So regardless of what that video shows, this court says you lacked diligence in uncovering or seeking the discovery necessary to bring that video footage to light and that that's why it did not rely upon it or allow you to reopen the decided summary judgment motion. So what argument do you have in response to these fact findings that the court made? Well, first of all, I believe that the court abused its discretion because we put into evidence that we could not gain access to the video. That's number one. Number two, the discovery—I'm sorry. Where is this evidence? Show me the evidence. Well, I'd have to go to the—I'd have to look in what we have. But we did file an objection to the initial—we filed an objection to the initial motion for summary judgment. I believe that's on 240, Your Honor. And in that, we said that there is material—there is evidence that we need to uncover before the court can render its opinion on summary judgment. But that's not enough because you were the one in possession of the evidence, and you didn't explain to the court what you needed or what was preventing you from getting to the evidence. That's why the court was upset with you is you can't—you can't wait two years and then have a court decide something and then the whole two years you're sitting on it. You've got the evidence. Your Honor, first of all, there wasn't two years. We filed our initial discovery in February, I believe, of 2022. I can't remember. But it was in February. The court granted additional discovery in September of that year. The court says the available evidence shows Upstream has been in possession of video footage for nearly two years. That's correct, Your Honor. But we couldn't break it. We did not have access to the code. You didn't explain that to the district court. And if you did, you need to show me where because the district court said in its opinion on reconsideration that you can't come and seek reconsideration of an already decided issue on the basis of evidence that you possessed all along and did not take reasonable diligence to uncover. Your Honor, part of the problem that we have here is the appellees made material misrepresentations regarding what had occurred under their watch of the equipment. They finally admitted that they operated the machinery. They tested the machinery. You are trying to blame us for not being able to find out what they had done in— Counsel, I'm not blaming you for anything. I'm an appellate court.  The district court has made fact findings. Yes. I have to give those fact findings deference unless you can show me in that record why those fact findings are clearly erroneous. That's my standard of review. I don't find anything. Even if I agreed with you, I can't find for you unless the district court was clearly erroneous. Agreement isn't even enough. Well, Your Honor, the district court was clearly erroneous because they failed—you are allowing the appellees here to— I'm not allowing anything. Okay, well, the district court allowed the appellees, Your Honor, the district court allowed the appellees to make material misrepresentations, which was not found by us until after the court entered summary judgment. And that is allowing them to have a benefit of making these material misrepresentations. Yes, but you had reconsideration motion. Yes. After that time, the district court directly, it appears to me, considered your reconsideration arguments and explained why it does not think that it should reconsider summary judgment. So I don't—what's missing? What am I missing? What you're missing, Your Honor, is the truth, the appellees truthfully answering requests for production of documents. That is what is going on. You ultimately gained access to the video. Yes. How did you gain access? We just were able to—we found somebody that could get into the machinery or into the video equipment. Who was the person? I'm sorry, what? Who was the person? I have no idea. My son was the one who did it. Okay. He found somebody who gained access. Okay, but you had two years in which to do that, and that's what the court said. The court says you were able to gain access to the video. You provided no explanation why the means you gained access to it isn't a means that was available to you earlier. Your Honor, there is evidence in the record that we tried repeatedly to gain access, and we finally were able to gain access. Once again, you're trying to blame us. Sir, I'm not blaming you for anything. Okay, but what the district court is, they're blaming us for the material misrepresentations of the other party. The other party has no representations regarding what you did. What you did is what you did. You had the burden of establishing to the court—you were the one that didn't produce this, didn't rely on this evidence earlier. So you had the obligation of explaining to the court, it was your burden to explain to the court why you weren't able to do that. And we did. We said that we could not break into the—we did not have access. How we got into getting access was probably—it was very difficult. We repeatedly tried to gain access to the video equipment. And— Sir, is that in the record? I'll have to review the record. It's not—I do not—it's in the record because it's in several of our declarations that we filed that we could not gain access. And then the other party kept making and changing their testimony as we went along in the case. And once again, the district court ignored those changes. They were punishing us for the—believing the other side's misrepresentations. I'll save the rest of my time, Your Honor. Let me point to Appendix 267. Okay. Can you get that? Yes. 67?  Yes? It says, Moreover, it does not appear that the footage substantially contradicts any of the statements the defendants made in connection with the summary judgment motion. As discussed above, a few portions of the footage at upstream sites, using both the file name and the timestamp, are ambiguous and do not actually show anyone producing the finished footage. You told me a while ago that the video clearly shows the appellees making the gutters or the cutters. Yes. Yes, it does. It's in the record. That contradicts what the court found. That's correct. And also, we have in the record the fist bump that Mr. Breckinich gave to a third party after they had a production run. So was the district court wrong in finding that they could not see the faces of who was producing the—? It doesn't—we identified who the parties were because the district court—  The video. The court— It doesn't show who was making the— But we knew who it was because we recognized them. The video doesn't show that. Yes, it does. The video showed the people that we knew who made the fist bump. We also know the people that it showed catching other product that had been extruded. I see that I'm out of time. I'm going to thank this court for— We'll restore some rebuttal time, Mr. Bachman. Okay. I'm not sure how to say your name, counsel. Mr. Bay? Yes. Mr. Bay, please proceed.  May it please the court, good morning. I represent the appellees in this case. This is not a closed infringement case. This is a case about lack of diligence and lack of evidence. The district court correctly granted summary judgment because the appellant failed to present evidence that created a genuine issue of material fact regarding whether or not my clients produced infringing gutter covers. Despite removing appellees— It is our position that that was our camera. Despite removing from our facility a video camera and having it for two years, nearly two years, from the time that they removed it to the time of the granting of the motion for summary judgment, they didn't review the footage at all, apparently. And as Your Honor correctly pointed out— Well, they didn't have the password. And they didn't ask for the password in discovery despite Mr. Bachman's statement earlier. So when he says they asked for the password in discovery, that's not true? It is not true. It was never asked for in discovery. Never? It was—he made a statement after the fact that he asked for it informally on a phone call. And it was a blatant misrepresentation to the court. There was no request for production or any other form of written discovery that asked for a password. He asked for footage, not a password, in his written discovery. That's my recollection of the record, and that's my recollection of the conversation. But how can you review the footage, or what good is the footage, if you don't have a password? Apparently he was able to get the footage without— Did you give him the— I did not know the password. I didn't give him anything. I didn't have a password. There was nothing to give. So despite having this information for two years, they sat on it. Apparently, after the district court granted summary judgment, mysteriously they were able to get a password somewhere and break into the system and file their motion for reconsideration. Why they were able to do that in two weeks after an adverse ruling, and why they weren't able to do it for two years, is what the district court had a serious issue with. Does the footage depict who was producing the covers? So the footage itself does not show in any detail what gutter covers are being produced. It's our position that the footage is showing a test production of what are called blanks in some instances. But it shows who was producing them. It was not a production. There was no production going on. Is it clear who the individuals in the video are? Yes, you can see in subsequent footage, you can identify individuals. Yes, you can do that. And you can also identify in footage unboxed gutter covers that haven't been boxed. But giving a high five to someone and not boxing gutter covers is not an element of patent infringement. And the footage itself does not show in any detail the actual gutter covers. You can't see what they look like. You can't see whether or not they satisfy the elements of a patent. You just see something coming off of a machine. So that issue, and that is why the district court said this information is immaterial. It doesn't go to the issue of are clients producing infringement gutter covers because there's no detail to see. You see something, but you don't see what it is. And that's why the district court correctly found that the late relied upon evidence was, most importantly, the appellants didn't exercise reasonable diligence in obtaining it. They have provided no explanation as to why for two years they couldn't review it, but in two weeks they could. Mr. Bachman doesn't even know who looked at it. He can't even point to anything that says this is what we did in that two-year span. The record is devoid of that information, and that's why the district court was very upset with him. And that's why it didn't satisfy Central District Local Rule 70-18, subsection A, that requires the exercise of reasonable diligence before you can review newly discovered information after a judgment, which is what we have here. And the other point that the district court made is that it's not material to the issue of infringement because it does not show that this gutter cover is infringing, and it doesn't show how it would be infringing even if my clients did produce it. So it wasn't material to the issue of infringement. But most importantly, it was untimely, not supported by diligence, and in the grand scheme of things, it was not outcome determinative, I guess is the right way to explain that. The court also... Mr. Bachman, the appellants, filed a motion for reconsideration not once, but twice. And the first motion for reconsideration is not before this court. He never appealed that, and I think that's a fatal problem for the appellants because that's the ruling that found that he didn't exercise reasonable diligence. And so if he's not going to challenge the ruling that says he didn't exercise reasonable diligence, then, as far as I can tell, he can't make any subsequent argument that also relies upon untimely video footage that likewise fails to explain how or what exercise of reasonable diligence was committed. And so that's, as far as I can tell, a fatal flaw, even if he wants to take the position that the district court erred in not finding an exercise of reasonable diligence, it's a fatal flaw in his appeal. Everything that... every piece of footage that he's now wanting to, after the fact, get into the record and argue is tainted by the same problem of lacking reasonable diligence in the exercise of obtaining it. And if you're not going to appeal that decision, you can't complain that it's not... that it wasn't allowed or wasn't considered at this court. By this court, rather. In terms of the other motions that were filed, the fee award, for example, the court made very clear findings that due to misrepresentations by Mr. Bachman about that discovery that he wants to, at this stage, argue about, that that discovery was... that the information that he requested was not withheld by the defendants, by the appellees. It was not withheld in their responses to requests for production. A password was not specifically requested in writing in a written request for production or interrogatory. And there was no misconduct in discovery by the appellees as found by the district court. And due to the misrepresentations he made to the court, namely that the video footage was withheld, according to him, and was withheld from production, even though they had the video camera that actually had it, and therefore we can't withhold something he has, we being my clients, that that was a repeated statement he made in every single motion he filed after losing on summary judgment. Counsel, I'm just going to tell you what I think about your case. Okay. I think your clients were probably infringing their patent. I think he was really pissed, and so was his son. I think they went in and took the videotape to prove it. Bad move. You don't steal. You don't take that stuff. At the end of the day, though, he didn't unfortunately do the job that a lawyer needed to do of producing that evidence in a timely fashion for the district court to consider. So you may win, but I don't think you're wearing the white hat at the moment. I think that high-five told us all we needed to know about what was really going on in that courthouse, but that's not the issue before me. The only issue before me is what did he proffer to the district court, and in light of what he proffered, did the district court clearly err, which I don't think it did. So do you have anything further you'd like to offer? I just felt like I wanted to put that on the record for him and his son. Okay, well, the only thing I would add to that, Your Honor, is the video footage that you, I think, might be considering is not showing infringement. Well, I'm not considering it because it's not part of the record because it wasn't unfortunately properly introduced prior to the summary judgment motion. I'm not considering it. The potential conclusion that you may draw from it, or didn't draw but could draw potentially, is not reflective of what's actually in that subsequent footage. Giving a high-five doesn't mean we've infringed the patent. It means something is working properly.  What is that something? The machinery that produces the infringing product. I mean, they weren't talking about it because of the game on in the background and someone just scored a touchdown. That's probably true, unless there was a TV there. But that assumes that the machine was producing an infringing product, and that's an assumption that is a huge question of fact. The gutter covers that were being produced were not infringing, and that remains our position. And so even if the video had shown in detail what gutter cover is coming through the machine, which it didn't, but even if it did, it would show the defects, the flaws, and that's why it was a test panel, which the record will show, and I'll stop here on that issue. That's why the test panel is not infringing. Okay, fair enough, Your Honor. Okay, thank you very much. Thank you, Your Honor. First of all, the gutter cover in question had a recessed water channel, which was protected by both the design and utility patent. So the mere fact that it ran through the roll former and came out the other end meant that they were infringing on the patent. Also, the opposing counsel has ignored that they had in their possession thousands of feet of finished product. So therefore, there was clear patent infringement here. I would like to draw the Court's attention to my brief on page 43, where I quote the Supreme Court. The Supreme Court of the United States has held, the benefit of calculation, which can be little better than speculation, as to the extent of a wrong inflicted upon his opponent. This is what happened in the lower court. They did not answer their production of document request. Truthfully, they filed declarations that contained material misrepresentations, and now we are to be somehow blamed that we did not put the proper evidence in front of the Court. We tried to get into the video. We could not get into the video. This whole problem would never have occurred if they had initially pleaded that they did test the product, that they did operate the machinery. They never answered truthfully. They never pled truthfully. That is why we are here today. The Court abused its discretion when it ignored clear evidence of a violation of 35 U.S.C. 271. I thank you. Thank you.